USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________
DATE FILED: 10/1/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DELAWARE TRUST COMPANY n/k/a CSC DELAWARE TRUST COMPANY, as Trustee for the PT ATL SPV GRANTOR TRUST,

Plaintiff,

- against -

SHERMAN HOLDINGS USA LLC; JACOB JACOBOWITZ; ENVIRONMENTAL CONTROL BOARD OF THE CITY OF NEW YORK; and "JOHN DOE #1" through "JOHN DOE #10," the last ten names being fictitious and unknown to the plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest or lien upon the premises described in the complaint,

Defendants.

Docket No. 1:26-cv-00700

**ORDER APPOINTING RECEIVER**

**THIS MATTER** is before the Court on the motion of plaintiff, DELAWARE TRUST COMPANY n/k/a CSC DELAWARE TRUST COMPANY, as Trustee for the PT ATL SPV GRANTOR TRUST ("***Plaintiff***"), for the appointment of a receiver (the "***Motion***"). Upon review of the Motion, all supporting papers and exhibits thereto, and the Verified Complaint filed herein by Plaintiff (the "***Complaint***"), for good cause shown, the Court FINDS as follows:

1. That this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332;

2. That Plaintiff's Complaint and the Motion demonstrate adequate grounds for the appointment of a receiver of the Borrower's Assets (as such term is defined below) pertaining to two parcels of real property located at 956 Sherman Avenue, Bronx, New York 10456 (Block: 2446, Lot: 7) (the "**Sherman Avenue Property**"), and 482-488 167th Street a/k/a 1150-1160



RE\63764\0027\6164530v1

Washington Avenue a/k/a 482 East 167th Street, Bronx, New York 10456 (Block: 2371, Lot: 23) (the "**East 167th Street Property**," and, together with the Sherman Avenue Property, the "**Property**"), and more particularly described in **Exhibit 1** annexed hereto, and that immediate and irreparable injury may result in the event a receiver is not appointed;

3. That the borrower, defendant SHERMAN HOLDINGS USA LLC ("***Borrower***"), and the guarantor, defendant JACOB JACOBOWITZ (the "***Guarantor***" and when referred to collectively with Borrower, the "***Borrower Defendants***" and each a "***Borrower Defendant***"), received notice of the Motion; and

4. That Borrower is in default of its obligations under the Loan Documents (as defined herein) as a result of, *inter alia*, Borrower's failure to remit the sums due and owing to Plaintiff under the Loan Documents on or before the Loan's maturity date of June 1, 2025 or at any time thereafter.

Based on the foregoing FINDINGS, the Court therefore grants the relief requested in the Motion.

**IT IS HEREBY ORDERED** that IAN LAGOWITZ (the "***Temporary Receiver***") of TRIGILD IVL, LLC, 24 Church Street, Second Floor, Montclair, New Jersey 07042, be and hereby is appointed as the receiver of Borrower's Assets (as defined herein).

**IT IS FURTHER ORDERED** that:

5. The Temporary Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the Borrower (collectively, "***Borrower's Assets***"):

(a) The Property; and

(b) All non-privileged documents, instruments, agreements and materials in Borrower Defendants' and/or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, financing, operation, preservation and protection of the Borrower's Assets, including, without limitation, all service agreements, contracts, licenses, permits, leases, floor plans, space plans, specifications, surveys, maps, and drawings of the Property, access codes, combinations, passwords with respect to the Property, maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, security systems, or other systems for which Borrower Defendants have had maintenance or repair obligations within the ten (10) years immediately preceding the date of this Order (collectively, the "***Project Records***"), to the extent that the foregoing is in the possession and/or control of Borrower Defendants;

(c) All checking, savings, depository, payroll, vendor, petty cash or other accounts relating to the Property except for the ones directly held or actually controlled by Plaintiff, together with all funds contained therein (collectively, the "***Project Accounts***"), to the extent that the foregoing is in the possession or control of Borrower Defendants;

(d) All rents, payments, revenues, refunds and other income from, relating to or derived from the Property received on or after the date of this Order (collectively, the "***Project Income***"), to the extent that the foregoing is in the possession and/or control of Borrower Defendants;

(e) All security, utility, prepayments and other deposits received by Borrower Defendants and/or their agents after the date of this Order and any deposits made by either Borrower Defendant to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Property (collectively, the "***Project***

***Deposits***”), to the extent that the foregoing is in the possession and/or control of Borrower Defendants; and

(f) The originals, if any in the possession or control of Borrower Defendants, of all leases, subleases, licenses, franchise agreements, tenant notices, lease amendments, side agreements, easement agreements, in Borrower Defendants’ or their agents’ possession or control relating to the use or occupancy of the Property (collectively, the “***Leases***”).

6. Borrower Defendants, their agents, employees, members, managers, officers and representatives, and any and all other contractors, persons and entities retained, hired or engaged by any Borrower Defendant, are hereby ordered (a) to immediately surrender possession and control of the Property to the Temporary Receiver; and (b) to immediately surrender possession and control of all the Borrower’s Assets in their possession and control, specifically and unless already provided, including, without limitation, all Project Records, Project Accounts, Project Income, Project Deposits, the originals of all Leases and the originals of all other contracts and agreements relating to the Property, to the Temporary Receiver. The Temporary Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Borrower’s Assets, including the Property, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Temporary Receiver to take possession of and control and to draw checks on any and all Project Accounts. All such documents shall be submitted to the Temporary Receiver within ten (10) business days of the date of this Order. Any future income related to the Property shall be turned over to the Temporary Receiver immediately upon receipt.

7. Subject to paragraph 13 of this Order, all funds in any account maintained by the Temporary Receiver pursuant to this Order shall remain collateral for the loan from Plaintiff to

Borrower (the "***Loan***") pursuant to all documents, instruments and agreements evidencing, securing or relating to the Loan (collectively, the "***Loan Documents***") and shall be paid to Plaintiff upon the earliest to occur of (i) the consummation of the foreclosure and sale (or acceptance of a Deed-in-Lieu of Foreclosure) of the Property; (ii) Plaintiff's sale of the Loan, (iii) payment of the Loan in full; or (iv) further Order of this Court.

8. The Temporary Receiver is authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and any such financial institution and any other persons in active concert or participation with Borrower Defendants is authorized to take such steps as are necessary to restrain or prevent Borrower Defendants from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, or deposits in any Project Accounts and are authorized to immediately turn over all funds in the Project Accounts to the Temporary Receiver. Any financial institution maintaining Project Accounts is authorized to provide to the Temporary Receiver a complete listing of account numbers under the name of Borrower Defendants, including accounts previously closed.

9. Borrower Defendants, and their agents charged with operating and/or managing the Property, are hereby directed to deliver to the Temporary Receiver and Plaintiff (with a copy thereof to Borrower Defendants) the following if in their possession, custody and control, within ten (10) business days after the date of this Order:

(a) an accounting of all Project Income, all Project Expenses (as defined below), whether paid with Project Income or by Borrower Defendants for the benefit of the Property, all Project Accounts and all Project Deposits for the period beginning from and after June 1, 2025 to the date of this Order;

(b) an updated rent roll dated as of the date of this Order identifying for each of the Leases: the term, space occupied, rent required to be paid, security deposit paid to Borrower, security deposit applied by Borrower, any rental concessions, commencement date, expiration date, options to renew/expend/purchase, expense recovery provisions, and identifying any default or payment delinquencies thereunder;

(c) monthly operating statements prepared for each calendar month for the months of June 1, 2025 through and including the present month, and year-to-date operating statements, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by Borrower Defendants or their agents charged with operating the Property;

(d) all copies of all reports filed with the New York State Division of Housing and Community Renewal from and after January 1, 2025 to the date of this Order;

(e) an accounting of all Project Income generated by the Property from and after June 1, 2025, to the date of this Order, which was not applied to the standard and customary operating expenses of the Property or delivered to Plaintiff; and

(f) all Project Income generated by the Property from and after the date of this Order which was not applied to the standard and customary operating expenses of the Property or delivered to Plaintiff. Additionally, Borrower Defendants and/or their agents charged with operating and/or managing the Property are hereby directed to deliver to the Temporary Receiver and Plaintiff promptly, but in any event within ten (10) business days after the date of this Order, an itemization of all unpaid bills and other amounts due and payable relating to the Property, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Borrower

Defendants and/or Borrower's management company, and Borrower's tax identification numbers. Unless otherwise provided herein, the Temporary Receiver shall not be responsible for payment of any expenses (including, without limitation, for services, build-outs, or any other construction), utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone) and unpaid payroll expenses incurred by, or for the benefit of, the Property prior to the Temporary Receiver's taking possession of the Property. The Temporary Receiver shall request that all utility companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone, not discontinue any services being provided to the Property. Borrower Defendants and their agents shall cooperate and provide assistance to the Temporary Receiver in furtherance of such requests. The Temporary Receiver is authorized to open new customer accounts with each utility that provides services to the Property, or at Temporary Receiver's option, require Borrower Defendants to name Temporary Receiver as an authorized user of any of the existing utility accounts for the Property, in which case, Temporary Receiver shall inure to the benefit of Borrower's security on deposit with such utility company, if any.

10. The Temporary Receiver is authorized and directed to demand, collect and receive from all tenants, lessees, subtenants, sublessees, licensees, occupants or other users of all or any part of the Property (collectively, "***Tenants***") under current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder. All Tenants are authorized to pay the Temporary Receiver all rents and other amounts and consideration now due and unpaid under the Leases or hereafter to become fixed or due thereunder.

11. The Temporary Receiver is hereby authorized and directed to lease, rent and license the Property on such terms and conditions as may be approved in writing by Plaintiff provided, however, that all proposed leases for a term in excess of one year are to be approved in writing by Plaintiff and Borrower or upon further Order of this Court. No required consent of Plaintiff, nor any other provision of this Order, shall render or cause, or shall be deemed to render or cause, Plaintiff to be a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.

12. The Temporary Receiver is authorized and directed to: (a) deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order in a segregated account in the Temporary Receiver's name under Borrower's federal tax identification numbers and referencing the instant case, in a FDIC-insured bank; and (b) make available by electronic means or by means as otherwise determined by the Temporary Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for the parties' review and inspection.

13. Notwithstanding anything set forth in the Loan Documents to the contrary, the Temporary Receiver is authorized and directed to use the Project Income and all other funds and monies coming into the Temporary Receiver's hands pursuant to this Order (other than Project Deposits) as follows:

(a) first, to the Temporary Receiver toward payment of the Temporary Receiver's fees as set forth on **Exhibit 2** attached hereto and incorporated herein;

(b) second, to the reasonable costs and expenses incurred by the Temporary Receiver in the performance of the Temporary Receiver's duties in accordance with this Order;

(c) third, to the payment of all monthly costs, expenses, payments and other monetary obligations and liabilities of the Property, specifically including, without limitation, all real and personal property taxes and assessments and all insurance premiums relating to the Property arising, in each case, from and after the date of this Order and being reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Borrower's Assets in accordance with this Order (collectively, "***Project Expenses***"), provided, however, that the Temporary Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of Plaintiff and shall not expend in excess of $100,000.00 without the prior written approval of Plaintiff and Borrower or upon order of this Court, except that nothing in this provision shall restrict Temporary Receiver from expending funds and resources without approval of Plaintiff or Borrower to address any emergent health or safety issues requiring immediate or preventative repairs, and provided further, however, that the Temporary Receiver may, only upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

(d) last, all remaining Project Income, funds and monies (collectively, "***Excess Funds***"), except for a reasonable Temporary Receiver's reserve if approved in advance and in writing by Plaintiff, to Plaintiff for application against the outstanding expenses, interest, principal, and other amounts owed by Borrower under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner in Plaintiff's sole discretion.

14. If the Temporary Receiver determines at any time, and from time to time, that the amount of Project Income then in the possession of the Temporary Receiver, or which the Temporary Receiver anticipates will be in the possession of the Temporary Receiver when required, is insufficient to pay any expenses described in paragraphs 13(a) through 13(c) of this

Order, then the Temporary Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit, whereupon Plaintiff shall have the right, but not the obligation, to advance to the Temporary Receiver funds to pay all or any portion of such deficit and (a) any such funds advanced by Plaintiff shall be deemed an advance to Borrower under the Loan Documents for the protection and preservation of the Property and the other Borrower's Assets, shall be added to the outstanding principal amount of the Loan and shall be secured by the mortgage, security title, security interest, lien and/or encumbrance of the Mortgage (as defined in the Complaint) and the Loan Documents; and (b) no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Property or otherwise subject Plaintiff to any liability to Borrower under the Loan Documents or otherwise.

15. The Temporary Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary for: (a) the proper management, operation, preservation and protection of the Property and the Borrower's Assets or to gain or recover possession of all or any part thereof; (b) the collection of any Project Income now due or hereafter to become due or fixed; and (c) the removal of any Tenant or other person unlawfully possessing, occupying or using any part of the Property. Any and all litigation by or against Borrower relating to the operation and management of the Property, except for the above-captioned matter, be and is hereby stayed during the pendency of the Temporary Receiver's appointment although the Temporary Receiver has the option, but not the obligation, to continue prosecution of or defense of any such action. Any party to such pending or future litigation may seek stay relief from the Court. This paragraph does not apply to this action or any other action that Plaintiff may bring in connection with the Loan.

16. The Temporary Receiver is authorized to use the tax identification numbers of Borrower with respect to the Property for banking purposes. The Temporary Receiver shall not prepare or file state or federal tax returns on behalf of Borrower and shall not be responsible for paying any unpaid federal or state taxes on behalf of Borrower.

17. On or before the fifteenth (15th) day of each calendar month, the Temporary Receiver shall provide by electronic means or by means otherwise determined by the Temporary Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to Plaintiff (with a copy to Borrower Defendants) concerning the operations, income and expenses of the Property, together with a rent roll for the Property dated as of the end of each such month stating the name of each Tenant and the rent, income and other consideration to be paid by each such Tenant.

18. Subject to the written consent of Plaintiff and Borrower Defendants or upon approval of the Court, the Temporary Receiver is authorized to engage accountants, a property manager and/or attorneys, as needed in the reasonable discretion of the Temporary Receiver, to advise the Temporary Receiver with regard to financial and legal matters relating to Borrower's Assets, to prepare financial statements and reports required under this Order, to initiate, carry on and maintain such actions, suits and proceedings for and on behalf of the Temporary Receiver as may be necessary for the Temporary Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the Temporary Receiver. Upon the approval of Plaintiff of the reasonable fees and expenses of such accountants, property manager and/or attorneys, the Temporary Receiver shall be authorized to pay such fees and expenses as Project Expenses.

19. (a) The Temporary Receiver, with Borrower Defendants' cooperation, shall cause all insurance policies currently insuring or otherwise relating to the Property and/or to the ownership, maintenance, repair, improvement, management, leasing, use, preservation or protection of the Property or to Borrower's interest in the Property to be endorsed to name the Temporary Receiver and the Temporary Receiver's agents, employees and contractors as additional insureds or as loss payees (as applicable) thereunder, all as their respective interests may appear.

(b) Borrower Defendants shall deliver to the Temporary Receiver and Plaintiff all material communications received by Borrower Defendants from the issuer of any such insurance policies, including, without limitation, cancellation notices, default notices, any pending or ongoing insurance claims, potential claims that have not yet been filed, and anything that requires a response, as well as any information, notices or documentation concerning any completed or pending tax appeals related to the Property.

(c) The Temporary Receiver is authorized to obtain from Borrower's insurance carrier the industry standard insurance protections afforded property managers of similarly situated properties, including but not limited to, being named as an additional insured on Borrower's liability policies related to the Property and receiving from Borrower's liability insurance policies, property insurance policies and business interruption or rent loss insurance policies appropriate waiver of subrogation clauses pursuant to which Borrower's insurance carriers would waive all rights of subrogation against the Temporary Receiver with respect to losses payable under such policies. In the event Temporary Receiver, in consultation with Plaintiff, deems Borrower's current insurance coverage to be inadequate or too costly, Temporary Receiver may obtain new policies

and coverage. In that event, Temporary Receiver shall notify Borrower that premiums due upon the Borrower's policies will not be paid as a Property expense.

(d) The Temporary Receiver is authorized and directed to maintain in full force and effect all such insurance policies and, if and when necessary upon expiration or termination of such currently existing policies, to procure and pay the premiums for comparable insurance policies relating to the Property with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents, or otherwise as may be approved by Plaintiff.

(e) Except as provided herein, Borrower and their agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Property that is in effect as of the date of this Order without the consent of Plaintiff and/or the Temporary Receiver.

20. Subject to the restrictions of this Order, the Temporary Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Temporary Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Borrower's Assets, including, without limitation, the Property and otherwise to carry out the Temporary Receiver's obligations under this Order.

21. In holding, retaining, managing, operating, preserving and protecting the Borrower's Assets, the Temporary Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Borrower's Assets, including, without limitation, the Property. The Temporary

Receiver is hereby authorized to reject any existing contract related to the operations or maintenance of the Property and shall not be liable for payment of any termination or cancellation fees associated therewith.

22. Notwithstanding anything in this Order to the contrary, Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, exercising its rights as holder of security title to Borrower's Assets and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect. Plaintiff shall notify the Temporary Receiver of any such sale or other exercise of Plaintiff's rights and/or remedies, and the Temporary Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements provided that none of such documents, instruments or agreements subject the Temporary Receiver to any personal liability.

23. If and when foreclosure proceedings against the Property shall have been consummated, or upon execution and delivery by Borrower and acceptance by Plaintiff of a deed in lieu of foreclosure for the Property, or upon payment of the Loan in full, and without further order of this Court, the Temporary Receiver shall within 30 days of such occurrence move the Court to be discharged and relieved from this Order and shall render a final report to the Court, to Plaintiff and to Borrower Defendants concerning the operations of Borrower's Assets. The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents. This Court expressly retains continuing jurisdiction over this receivership until after

the rendition of the final report by the Temporary Receiver and the entry of an order discharging the Temporary Receiver.

24. The Temporary Receiver is required to submit proof of a receiver's bond with the Clerk of this Court in the amount of $5,000.00 within ten (10) business days of this Order. Upon the Temporary Receiver's submission of proof of a receiver's bond, the Temporary Receiver shall be authorized and empowered to perform its duties under this Order, including taking control of Borrower's Assets.

25. In addition to the powers and instructions expressly set forth in this Order, the Temporary Receiver shall have all the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Property and the Borrower's Assets and otherwise to comply with the terms of this Order.

26. In the event that a bankruptcy case is filed by Borrower during the pendency of the receivership created by this Order, Borrower must give notice of same to this Court, to all parties, and to the Temporary Receiver, within 24 hours of the bankruptcy filing.

27. Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Temporary Receiver shall do the following:

(a) Immediately contact Plaintiff and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or motion to dismiss and (ii) relief from the Temporary Receiver's obligation to turn over the Borrower's Assets (11 U.S.C. § 543). If Plaintiff indicates no intention to file such a motion within 10 days, then the Temporary Receiver shall immediately turn over the Borrower's Assets (to the trustee in

bankruptcy, or if one has not been appointed, then to Borrower), and otherwise comply with 11 U.S.C. § 543.

(b) If Plaintiff notifies the Temporary Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Temporary Receiver is authorized to remain in possession and preserve the Borrower's Assets pending the outcome of those motions pursuant to 11 U.S.C. § 543(a). During this period, the Temporary Receiver's authority to preserve the Borrower's Assets is limited as follows: The Temporary Receiver may continue to collect rents, issues, and profits. The Temporary Receiver may make disbursements, but only those which are necessary to preserve and protect the Borrower's Assets. The Temporary Receiver shall not execute any new leases or other long-term contracts. The Temporary Receiver shall do nothing that would affect a material change in circumstances of the Borrower's Assets.

(c) The Temporary Receiver is authorized to retain legal counsel and a property manager to assist the Temporary Receiver with the bankruptcy proceedings.

**IT IS FURTHER ORDERED**, that the parties and all persons and entities acting in concert with any of them are hereby **ENJOINED** from: (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Temporary Receiver exercising his powers and performing his duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the Borrower's Assets, specifically including, without limitation, the Project Records; and (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing or operation of the Property and the Borrower's Assets, except as otherwise permitted under this Order or upon the specific request of the Temporary Receiver.

**SO ORDERED.**

**Dated: October 1, 2026**
**New York, New York**

ANALISA TORRES
United States District Judge



RE\63764\0027\6164530v1

# EXHIBIT 1
## (Property Description)

**Parcel I:**
All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, County of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Sherman Avenue, distant 141 feet northerly from the corner formed by the intersection of the easterly side of Sherman Avenue with the northerly side of E. 163rd Street; and

RUNNING THENCE easterly parallel with the northerly side of E. 163rd Street and part of the way through a party wall, a distance of 104.78 feet;

THENCE northerly parallel with Sherman Avenue, a distance of 43 feet;

THENCE westerly parallel with the northerly side of E. 163rd Street and part of the way through a party wall, a distance of 104.78 feet to the easterly side of Sherman Avenue; and

THENCE southerly along the easterly side of Sherman Avenue, a distance of 43 feet to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Block 2446, Lot 7, Bronx County and also known as Parcel I: 956 Sherman Avenue, Bronx, NY 10456.

**Parcel II:**
All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, County of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at the intersection of the easterly side of Washington Avenue and the southerly side of E. 167th Street;

RUNNING THENCE easterly along the southerly side of E. 167th Street, 90.41 feet;

THENCE southerly along a line which on its westerly side makes an angle of 91 degrees 03 minute 07 seconds with the southerly side of E. 167th Street, 75.33 feet;

THENCE westerly along a line which on its northerly side makes an angle of 89 degrees 58 minutes 53 seconds with the last course, 25 feet;

THENCE northerly along a line which on its easterly side makes an angle of 90 degrees 1 minute 7 seconds with the last course, 5.33 feet;

THENCE westerly along a line which on its southerly side makes an angle of 90 degrees 1 minute 7 seconds with the last course, 45 feet;

THENCE southerly along a line which on its easterly side makes an angle of 89 degrees 58 minutes 53 seconds with the last course, 5.33 feet;

THENCE westerly along a line which on its northerly side makes an angle of 90 degrees 21 minutes 47 seconds with the easterly side of Washington Avenue, 19.96 feet to the easterly side of Washington Avenue;

THENCE northerly along the easterly side of Washington Avenue, 75.33 feet to the point or place of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Block 2371, Lot 23, Bronx County and also known as Parcel II: 482/488 East 167th Street a/k/a 1150/1160 Washington Avenue a/k/a 482 East 167th Street, Bronx, NY 10456.

**EXHIBIT 2**
**(Fee Schedule)**

**Receivership Fee**: Commissions in the amount of five percent (5%) of the sums received and disbursed by the Temporary Receiver with respect to the subject Property.